On behalf of the FAA, Mr. Jason Esmond, on behalf of the FAA, Mr. James O'Brien. Good morning, Your Honors. Good morning. May it please the Court, my name is Jason Esmond. I am here on behalf of the plaintiff, Gunther Gassner. The issue presented by the plaintiff before this Court is whether the Circuit Court erred in granting summary judgment for defendant. The Circuit Court's granting of summary judgment is, of course, reviewed to no vote. This issue stems from a workers' compensation settlement contract that was entered into on May 1st of 2002. The plaintiff had suffered an injury to his lumbar spine in May of 2000 for which he underwent a fusion in February of 2002. While being treated for a staph infection at the surgical site, the parties entered into a workers' compensation settlement contract. The contract noted that the defendant would agree to pay reasonable and necessary medical bills related to treatment to the low back causally related to the alleged injury for a period of one year after the date of the contract approval. Who wrote the post-settlement agreement? The post-settlement agreement was drafted by the defendant and agreed to by all parties. Wasn't that kind of a standard fill-in-the-blank type of thing? For the most part, it's standard. The terms of the settlement, which had the language that the defendant would pay the medical bills for the period of a year, that was incorporated. The rest of it is kind of boilerplate, and you insert the terms. But that language, to the lower back, that's an issue here, was written by? That was written by the defendant, yes. Approximately four months after the contracts were approved, the plaintiff began to experience symptoms of a staph infection in his chest and his heart. He was subsequently diagnosed with a staph infection, and treatment was provided for which the plaintiff incurred approximately $190,000 in medical bills. These medical bills are now the subject of the petition that was filed before the circuit court to have these bills paid pursuant to the settlement contract. The defendant moved for summary judgment, alleging that there existed no issue as to any material facts, and that the defendant was entitled to judgment as a matter of law. At the circuit court level, the judge erroneously granted the defendant's motion. As part of his motion for summary judgment, the defendant had attached an affidavit from Attorney O'Brien indicating that the outstanding medical bills were not covered under the settlement contracts as they were not treatment to the low back. Judge Fish did not consider the terms of the settlement contracts. He didn't reach whether there was any ambiguity in the language of the contract. He merely held that because the plaintiff did not provide an affidavit with his response to the defendant's motion for summary judgment, which refuted Attorney O'Brien's affidavit, that the affidavit was accepted as true, leaving no issue of facts as to whether there were any unpaid medical bills. Was the affidavit proper? Was it conclusory? The affidavit was conclusory. The affidavit noted some payments that were made, but the part relied upon by Judge Fish stated that there are no unpaid medical bills for treatment to the low back, which is a conclusory statement given that the entire issue is the interpretation of the language of the settlement contract. There is also the issue that Judge Fish apparently overlooked the affidavits that were provided with the defendant's responses to plaintiff's request for discovery. There was an affidavit along with the request for interrogatories that was provided to the plaintiff, and there was also an affidavit attached to the responses for the request for admissions. Was it pointed out to the trial court during the argument? It was not pointed out to the trial court. In fact, the trial court seemed to be asking that direct question of where is the evidence of the unpaid bills. It was noted that the medical bills and medical treatment records were all a part of the affidavit provided by the defendant, were all a part of the record as they were provided with the discovery responses that the defendant had included in his motion for summary judgment. Is your point that there is a material issue here? Yes. And where do you get that from? The issue of fact is whether the treatment that was provided, the medical records, was provided for treatment to the low back as provided by the settlement contract. Right. Is that clause ambiguous on its face? I believe it is. Why? Because even without any surrounding information, just the statement as a whole, treatment to the low back, it's ambiguous as to exactly how far that goes. At the time of the settlement contract, the plaintiff was undergoing oral antibiotics to treat the staph infection along with physical therapy. Based on the defendant's extremely narrow interpretation of the language, those treatments would not even be included in treatment to the low back as they were not applied directly to the low back. Well, if in fact the phrase to the lower back, without taking into consideration causally, and you claim that there was treatment to the lower back because there was staph infection, then why is it ambiguous if all you have to do is prove that part of the treatment to the lower back related to the staph infection and the staph infection apparently was never resolved? Or was it? Is that the question of fact? Is this the same staph? In other words, we don't have any issues here relative to interpretation. The only issue is, is this the same staph infection that came from the lower back that moved up to the heart, or is this a separate staph infection that came from a toenail? This is also an issue of fact that should be resolved. Which is your argument, that it's an ambiguity or that it is not ambiguous and that this did in fact come from the lower back, that because the staph infection that was being treated as part of the lower back, quote-unquote, was not properly treated because obviously it acerbated and got worse? It's our position that the contract is actually unambiguous and that the treatment for the staph infection that traveled from his back to his heart would be provided under the contract. So then there's a material issue of fact as to whether or not this did in fact travel from his back to his heart. That is true. So, Justice Jorgensen asked you if there was an ambiguity, you said yes. Now you just said there isn't. So, can you tell me which one you decided? In our opinion, there is no ambiguity in that the treatment is clearly covered under the contract. We can see where, based on defendant's idea. In part on the fact that they were paying for the staph treatment when it was, quote-unquote, in the lower back. That's correct. And then once it traveled, they stopped paying. And there's an issue of fact as to when it became not treatment to the lower back, if that's what the court would decide, and how far that staph infection would travel from its original destination to the heart, where there is a line as to where it would all of a sudden become not treatment to the lower back. If it had said injury to the lower back, would we have an ambiguity? If it had taken out treatment to the lower back, is that what you're asking? My point is, is the treatment may be different than injury to the lower back. The injury may be a slipped disc, a ruptured disc, or whatever. The treatment of that and all of the things that flow from that treatment can be different. Maybe they're the same, but they can also be different. They aren't necessarily identical. That is true. And the language of the contract actually says for treatment to the lower back, cause related to the alleged injury. So it incorporates both of them. So it's more specific relative to treatment rather than injury? Injury is more situs? I believe so. So treatment relates to the entire body? I think taken as a whole, the entire portion of that relates to treatment to that particular injury. Well, they didn't just use topical antiseptics. They shot your client with intravenous antibiotics, did they not? They also did that. Oral antibiotics? Oral, intravenous, all of these things would not. So these were treatments of the lower back. But they weren't necessarily treatments on or in the lower back. That is true. They were, based on the defendant's interpretation, they may not have even been treatments to the lower back. It's our opinion that they were definitely treatment to the lower back as they were being treated to or provided to treat the staph infection that clearly arose from his cervical fusion, or his lumbar fusion. Is this clause, is this, do you perceive this as all part of one general release, or is this 15 words an exception to the general release? I mean, in other words, what was the purpose of this release? If your client hadn't entered into anything, my understanding of work was accomplished, the employer was responsible for anything causally related to the injury of May 30th, 2000, right? Yes. So what were they really, what were you negotiating? We're negotiating. Well, let me say this. Would it be fair to say that your client gets $47,000 and the employer says, look, I'll cover it for the next year and then I'm done? Exactly. They're clearly establishing a deadline for how long they would provide treatment for this injury. Do we look at that context when we determine whether or not there's an ambiguity here? I would say so, because that context is specifically stated in the language of the contract, that this treatment was provided for one year. If it's a release, as referred to by Justice Jorgensen, what's the consideration both parties gave for that release? The defendant gave up his right to have any treatment past the May 1st, 2003 deadline, and the defendant provided, I believe it was $47,500, basically for the release of any treatment after that date. And a promise to treat up to one year, correct? Correct. In this context, what does treatment mean? What's that? What does treatment mean in this contract? The treatment? Treatment is itself kind of an ambiguous word. What we're driving at here is, do we look to the four corners of this contract to decide the rights and responsibilities of the parties here, or should we get into some more extrinsic evidence outside the four corners to decide whether an ambiguity exists, and then, really, what was the intent of the parties? I believe that the contract, if not looked at outside the four corners, looking strictly at the language of the contract, the treatment provided to Plaintiff's infection that had traveled into his heart would clearly be included. That is clearly different than the defendant's position in that this language would not provide for that additional treatment. Given that there's room for interpretation of what the language of the contract actually provides for, I think we have to actually look outside of the contract to the circumstances surrounding the agreement's execution. Is it correct to say that the trial court determined that there was no ambiguity? The trial court did not determine that there was no ambiguity. The trial court merely stated that because the defendant had supplied an affidavit, which frankly... Which I've refuted. Frankly, yes. But frankly, that affidavit was conclusory in its opinion that the treatment was not provided for under the language of the contract. Further, the Illinois case law clearly allows answers to interrogatories and affidavits to be treated as affidavits for summary judgment purposes. Plaintiff provided in his responses to the defendant's request for admissions that the treatment provided by various providers was for treatment to the low back. An affidavit was attached to that response swearing to the truth of the affirmance. In Plaintiff's response to the interrogatory request, Plaintiff listed each provider that provided treatment to the low back and also listed every single date that that treatment was provided. An affidavit was also attached, signed by the plaintiff, swearing to the truth of those interrogatories. Judge Fish, his decision did not indicate that he was aware of the plaintiff's discovered responses or the attached affidavits. On the contract, he noted that the plaintiff offered no affidavits, no depositions, or any other competent evidence. This would beg the question that he overlooked those discovery responses or did not consider them. The defendant argues that Plaintiff's affidavits in response to the discovery requests were insufficient to counter the O'Brien affidavit. However, the O'Brien affidavit itself offers only the opinion that the treatment that was provided to the staph infection in and around Plaintiff's heart was not treatment to the low back. Under section 191 of the Illinois Supreme Court rules, the affidavits in support of the most reasonable judgment shall consist of facts and not conclusions. O'Brien's affidavit provided no expert opinion or facts establishing that the treatment to Plaintiff's staph infection in and around his heart was not treatment to the low back, as contemplated by the contract, only the conclusory opinion that it did not. As such, this court should remand this decision back to the Supreme Court for further proceedings. Just so I understand correctly, the thrust of your argument is that the trial court should have considered more than just this single affidavit, and that's the error that you're asking us to reverse. That and that even considering that single affidavit, which only offered the conclusory opinion that the medical records and the bills were not treatment to the low back was also error. Are you claiming that summary judgment should have been granted for you, or there should have been a trial on the merits? We didn't request summary judgment at the time. I don't think it should have been, but I feel if we had, that it should have been granted for Plaintiff, yes. Okay. That's called a counterfactual condition. Thank you. Counsel. Okay. Good morning. I'm going to please the court. Counsel. I'm James O'Brien, Law Office of James O'Brien, on behalf of Defendant Rainier Manufacturing. Obviously, all these issues and the various positions have been thoroughly briefed. While it was definitely our position that Judge Fish correctly granted the summary judgment motion order, we also strongly urge that his order denying Rainier's motion to dismiss for statute of limitations purpose was erroneous. In our opinion, Illinois case law is clear for multiple reasons that a five-year statute of limitations is applicable to the instant situation. How do you distinguish this case from Gibbons? Gibbons is very simple. Gibbons, first of all, is an appellate court case that is contradictory on its face. Gibbons itself acknowledges that there's no difference between a commission approval of a contract and a commission award, which is the same thing that the Supreme Court in Allers back in the 70s had found. Yet, it goes against that and says, well, we're going to apply a ten-year statute. Gibbons also ignored a century of case law with regard to oral contracts being for five years, as we've indicated in our brief. Why is this an oral contract? We're suggesting that parole evidence cannot be allowed in our motion for summary judgment argument, that it's a four corners rule case. It's a petitioner that wants to bring in parole evidence. I'm sorry, you said that parole evidence can't be brought in? No, I'm saying they're trying to bring it in. Well, didn't you bring it in when you filed your affidavits? No, no. The affidavits that we filed, there has to be the existence of treatment to the low back, qualifying treatment to the low back, or no qualifying treatment. You have to address whether there's qualifying treatment to the low back. Now, in order to do that in affidavit form, you have to be able to state that facts that are admissible into evidence. Based upon the 35 years of experience in comp and in reading medical bills and in reading medical records, that affidavit stated that based upon that experience and the review, there are no records in there showing qualifying treatment to the low back, meaning it had to occur within the one year. It had to be to the low back, and it had to be causally related to the initial injury. And there were no unpaid medical bills. What does that mean, treatment to the low back? It has to be treatment directed to that body part area. It can't be to the head, it can't be to the toes, it can't be to the heart. When they were doing that Solomon contract language, they could have put any language in there that they wanted. And Petitioner's counsel, I'm sorry. But counsel, I thought that you drafted the agreement. The terms of Solomon were drafted by predecessor counsel, and they were then sent to Gassner's counsel, who testifies, who has right in there the affidavit certification that he's experienced. And that it's reasonable and proper for the commission to approve this. Let me ask you this. When you previously were paying bills, did you ever pay a bill for treatment that was not applied directly and exclusively to the lower back? Certainly, there was treatment prior to the Solomon contract that may have resulted in an injection into an arm, the antibiotics. The infection site was in the low back surgical area. It was a post-surgical infection. It had to be addressed. They had to go back in and clean it out for that infection. Now, there was mention earlier, and we've cited in our brief, if you're going to get into the extraneous evidence, the parole evidence, we don't even have the same infection here. On 11-102, Judge Pinsky, the infection disease expert, said it's either the result of surgery or a hematogenous, a blood infection. We don't have evidence of either. The one was resistant. The other was not resistant. We're talking about two separate things. We don't even have a meritorious case here. We paid stuff earlier. But isn't that something that should be decided at trial, not on motion for assembly judgment? If they wanted to raise that, they should have raised it. The procedures are there for a reason. And they never did. They were given the opportunity even to address that, an oral argument, and they never did. And we get to that. But we don't even get to that. We have a statutory action here, and a statutory action, according to the case law, is five years. There's no question about that. That's Parmelee. That's Lyons. That's Black. However, they tried to introduce parole evidence. That's what they want to do. There's another series of case laws that if you, in a contract case, are trying to introduce parole evidence, now that takes it out of the ten-year written contract, and because you want to get oral evidence in there, it makes it into a five-year statute situation. That goes all the way... I understand your claim. Any written contract for which parole evidence is submitted becomes a parole contract? Is that what you're saying? What I'm saying is if you are going to try to introduce parole evidence to explain a written contract... To explain or to establish a term. Either. Either. If you're going to go to parole evidence or look to parole evidence, which is going to be oral, it therefore changes what would have been or could have been a ten-year statute of limitations to a five-year. The Supreme Court, in Armstrong, as we've shown, says that you can't pursue, under one theory, in this particular case, they want to pursue a theory of being allowed to introduce parole evidence, and then defend a statute of limitations challenge on another theory. That it's a written contract. Armstrong said theory of proof didn't say theory of proof. It's still their attempt to go outside the four corners of the contract and introduce or address... How are they going outside of it if they're attempting to explain something inside of it? They're looking to language or meaning or awareness or what the parties intended to do. All of that is an explanation, an attempted explanation, through oral evidence that they would like to introduce as to whether or not this is something that is just plain English, treatment to the low back, or not something that's understandable as plain English and you have to look elsewhere. We would strongly suggest that if you look at the experience in the O'Brien affidavit and the experience of Judge Fish that we've set forth in length, who was a workers' comp attorney before he assumed the judgeship, you have extensive experience understanding exactly what is treatment to the low back. You're claiming that treatment to the low back is a term of art that's supposedly recognized in the industry, are you not? Otherwise, what's the point with... No, I'm not suggesting treatment to the low back is plain English. There is no special term of art about treatment to the low back that is different than plain English. You don't substitute English when you get into the practice of workers' comp for some mystical language. It is the same language. You seem to be relying on the existence of a great number of years of experience in workers' comp both by the attorney in the affidavit as well as Judge Fish. If this is plain English, what relevance does that experience have? It is relevant to the issue as to whether or not there is a genuine issue of material fact. If there is no genuine issue of material fact based upon the evidence, what's in evidence as a result of the affidavit, then motion for summary judgment is appropriate and should be granted. Is the absence of a material issue of fact your position that treatment to the lower back is the words in that sentence that are at the forefront? That's not a very well-worded question. My point is, though, you read the contract and you say, I have reviewed all the records and I have determined that nothing qualifies. Therefore, here is my conclusory affidavit. Judge, there's no material issue of fact. I would not necessarily say it's conclusory. According to 191A, the facts in the affidavit have to be facts that can be admissible in the evidence. Whether or not there is any medical treatment in those records to the low back is a fact admissible in the evidence. Whether or not there are any unpaid bills for any such treatment of existence. I guess we all keep trying to get you all to answer the question. What does treatment to the lower back mean? Does that mean treatment to a staph infection that has spread to the rest of the body? No. Why do we leave in causally connected then? Because the treatment to the low back had to be distinguished, if it was going to occur during this upcoming year, from any other back problems that might have occurred. Who knows what's going to happen in a year? An automobile accident, a slip and fall. It could be any type of new injury to the low back. Your position was, we were responsible under this contract for the staph infection in the lower back. We were responsible for the staph infection in the low back up to the point that agreement had been reached and the contract was signed by attorneys for both counsels. So your position would be that after May 1st, I forget the year. Correct, 2002. No further treatment for the staph infection. Correct. That's not quite true, I would think. I would think you would at least admit that if there were still some pustules or pus coming out of the back, that at least you would be entitled to coverage for that. Well, keep in mind that that's what was required. There was $26,000 plus paid after that settlement contract for medical bills. And it's not an admission of liability to pay after the 47-5 was paid. But they went ahead. If there was questions, they paid $26,500. $26,500. So it's not like they shut the door. My point is that you are going to literally translate that phrase as treatment of the back or the lower back. If there's an infection in the lower back that was there at the time this contract was signed, it appears to me at least, and you tell me if I'm wrong, that as far as you're concerned, your client would be required to pay reimbursement for treatment located in what a doctor would testify is the lower back. But any septus or any inflammation or any bacteria or any virus that supposedly was there at the time of the injury or at the time of the surgery, but went someplace else in the body, is not recoverable or reimbursable on the basis that it's not within this confined area or this defined area where the lower back is. That assumes a couple of things. A, that the staph infection went somewhere else. That's not proper based upon the medical bills. Maybe it's not proper. 11-102, Dr. Pinsky, the infectious disease expert, said he didn't find any evidence that this is the same staph infection. And if you look at the blood testing that was done in central DuPage Hospital, that was staph-resistant. The other one back in February was not staph-resistant. So we have two areas in the medical, if you want to get into that, that show we have a completely different organism, different staph infection, which is the most common one, and that's not the same one that we're talking about here. We could have paid, if we chose to, if there was any doubt, we could voluntarily pay and under Section 8A of the Compact, that is not an admission of liability. He got his 47-5. He got his 26. But at some point, when all of a sudden now we're talking about a different infection in a different body part that's shown by the medical records, that's where it was stopped. You know, Judge Fischu apparently has a great deal of experience in workman's cat. At least to me, it appears to be buying into the plaintiff's definition of what it means for treatment to low back based on the language that he uses in his order, where he talks about unpaid medical bills arising out of his low back injury. He doesn't say treatment to the low back, he says medical bills arising out of the low back injury. But he grants the sum of judgment based upon there being no evidence of unpaid bills to contradict the O'Brien affidavit. That's the way I read that, am I incorrect? I think I read it the same way. I don't disagree. I do not agree with his couching of treatment arising from the injury. That's separate from treatment to the low back. But he's correct that he never gets to even address that because of the affidavit. And also, we never even get to this issue with a statute of limitations being a five-year statute. Was the purpose of the payment of $47,000 in sum, it was $47,500, was that in anticipation that, look, all right, you have a staph infection, we're paying you X number of dollars today, you spend it as your CFIT, but we're, in the future, we're only going to be paying for direct treatment to the surgical site, the injury site. We think that is a very proper position and assumption. I wasn't there, so I can't tell you with a straight face. I know exactly what it is, but that's certainly my interpretation for that substantial amount of money. And there are any other languages that could have been inserted there. Counsel had two weeks once he got it. That's it. We got what we got. And so your position is this is not ambiguous on its face. That's correct. Absolutely correct. And if we were to read that finding it to be not ambiguous but concluding some other position? What other position? I'm not sure how to answer the question. If anybody can read a couple of phrases and one person can say, well, I think it means this, and somebody else thinks it means that, your position is it's not ambiguous at all. So if we were to also conclude it's not ambiguous but draw a different conclusion from that, what would your position be? Is it the conclusion that one that you can draw in the face of non-ambiguity from the four corners? Because only if there's ambiguity can you go beyond the four corners. Right. But I think even under the four corners rule, if you find that it's ambiguous on its face, then you do go outside. In your position, it's not ambiguous on its face. Correct. Correct. All right. So if someone were to read that and say, well, it's not ambiguous, it would seem that all staph infections would be included because it's treatment to the lower back. Is that as fair a reading of the phrase? No. I don't believe it is. I would not be able to agree with that to be a fair reading based upon the language that's there, especially when compared to the language that could have been there if they wanted it to be there. Right. But we really can't look to that and say, well, because you didn't put this language in or you didn't put that language in. I mean, four corners says you've got to look at just what's here, not what could have been, not what might have been. Exactly. And you are limited to that. The Supreme Court very clearly in air safety said, wait a minute, you have to protect against the vested interests later on of the parties. And the only way you can protect against that is to make an exclusive interpretation, limit them, binding conclusory to the language in there. So we think you're limited to that. But didn't that case also talk about there was an extra clause inserted into that contract that said, no matter how ambiguous this might seem to somebody else, we want to live with these words. We don't want to have extrinsic evidence brought in. As I stand here, I'm not sure about that extra clause one way or the other. I'd have to check. Is it your position that you are the only one that has a reasonable interpretation of what that clause means? Because, for instance, if the appellant's attorney has a reasonable interpretation of what the clause means and you have a reasonable interpretation of what the clause means, there can't be two reasonable interpretations and the law says there's an ambiguity on its face. So I assume, based upon what you've said, as far as you're concerned, your interpretation is the only reasonable interpretation of that clause. The only interpretation of that clause that exists in an affidavit that was submitted under Section 191A in conjunction with the statute of limit, the motion for summary judgment. If the other side had a position and they wanted to state it, I'm not saying that would have concurred with that, but they would have had the opportunity to put it in an affidavit or even answer the judge. I've never heard, and I've been a lawyer since 1969, of a reasonable interpretation being contained in an affidavit and constituting evidence of what supposedly a reasonable interpretation is. No, I'm sorry. I apologize. That's the best that he could have done. He also would have been required to point out, in my opinion, medical bills that were unpaid that would have qualified under that limited open medical provision. Now, I don't think he was able to do that or would have been able to do that even had he submitted an affidavit. But again, this is all hypothetical. He didn't. We don't even get to any of this, his parole evidence attempts, because he never did. There are requirements, he didn't meet them, just as with the statute of limitations, he didn't meet them, and now he's looking for the court for mercy. So your position is, regardless of the quality of the affidavit presented on behalf of the employer, since the employee didn't present anything, that's what the court had to rule on, and they ruled in your favor, and we should not now basically allow the employee a second bite at the apple. Is that kind of what you're saying? In conjunction with our position, outside the four corners, you can't, is what we're suggesting. There is the contract, there's one sole interpretation under the contract, according to the language. And following that, there's the affidavit, and the affidavit says no unpaid medical expenses. But you do acknowledge that in order to get to that position, the affidavit has to say, this is what I, this is what the phrase means, this is what that sentence means. And you find that that is not a conclusion. No, that is fact. That's a statement of fact. Because an affidavit must, of course, contain only statements of fact. Based upon the language, treatment to the low back, limiting it to that language, all of those medical records were reviewable, and were reviewed as were the bills. So, basing it on the clear language, what's in the contract itself, treatment to the low back, that those were facts admissible in evidence in the affidavit. But your position is, it's clear as a bell. And because it's so crystal clear, that makes it a statement of fact, not a conclusion. Is that your position? I mean, isn't it, isn't it just, you're reading a phrase, if this had gone to trial, 12 people would have decided what that contract meant, a judge decides. But you took the position in an affidavit, I'm reading this, and as a statement of fact in my affidavit that I would swear to, this is what it means.  I mean, as opposed to your affidavit, it would say... I guess my answer would be this, Your Honor. Regardless of whether it was the judge, regardless of whether it was the 12 jurors, they would have had to have based their decision on something. And there would have been testimony as to what was in the bills, what was in the records, and that testimony would have been whether or not there were any unpaid bills for treatment to where? Treatment to the low back. That's the testimony that would have had to go in for any trier of the fact. And that testimony is what was in the affidavit. I have nothing else to do. You acknowledge the concept of equitable tolling of a statute of limitations when an action is pending in the wrong form? Yes, that's correct, but that is not applicable here. There can only be a tolling if there were review proceedings pending. The court below, the commission, and the petitioner himself stated that what he filed at the commission was a motion to enforce. He gave up all white rights to review. But clearly stated in the terms of the contract. The commission took it as a petition to review. No, no, no, the commission stated that it had no jurisdiction because it was a motion to enforce. Right, well, did it say it had? Yes, yes, the language is right in there in its order. That because it was a motion to enforce and not a motion to review. Yes, and that's why it had no jurisdiction. That's what they said. Even the petitioner himself titled his document at the commission, Motion to Enforce. So there was no review proceeding, so there was no tolling, and therefore the five years were up in May of 08. He still had six months and didn't do anything. The Supreme Court has said six days is not harsh. If you get just six days notice, as in Mitchell, you better get in there and get it filed. He had six months and he still did nothing. And the Supreme Court cases are clear. You have a responsibility as an attorney, especially in your area of workers' comp, that you better know what the case law is and you better follow it. The court that we cited at the very end said learn the rules, learn the instructions and play by the rules. They didn't do that here. It's not harsh. That's what should have happened. Thank you. Commissioner McClatchy. I would initially like to address defendants' cross-appeal in the statute of limitations issue. Judge Fish correctly determined that the 10-year statute of limitations pursuant to Section 206 of the Code of Serial Procedure applied. Section 206 provides for a 10-year statute of limitations on actions for written contracts. In Gibbons, the court noted that this was a written settlement contract and applied the 10-year statute of limitations. Counsel slights the Black decision, which found the five-year statute of limitations applicable because this was a decision from the arbitrator and from the commission. It was an award by the commission. The dissent in the Black decision noted that had claimant's benefits been awarded by virtue of a settlement agreement as opposed to a judgment, the 10-year statute of limitations would apply. Further, even if the five-year statute of limitations applied, the statute would have been told by the proceedings before the commission. Defendant argues that the motion to enforce would not toll the statute because it was not a petition for review. The petition was filed with the commission in October of 2003. The commission held multiple hearings, a loud argument on that issue, and did not decide that issue and that they lacked jurisdiction until November of 2007. Had it been clear to the commission on its face that this motion to enforce, that they did not have jurisdiction to hear this motion to enforce, it wouldn't have taken them four years in which to decide if they had jurisdiction to hear the issue. As such, the defendant was involved in all those proceedings. There's no prejudice to defendant. Why didn't the plaintiff file the petition in the circuit court during this time period before the statute would have run in the five years? Because there are other decisions. The Myers decision, the Keystone decision were cited in our brief that when there's any proceeding for review pending before the commission, that a 19-G petition is inappropriate until after the decision has been made. The commission said we don't have jurisdiction and there were still six months left before the five years run. It was, I was not, they are not sure why it was not filed with the commission or with the circuit court until October of 2008. To no matter the statute would have been told for the four years that the commission had the review before it. Other cases have held that the Keystone case actually dismissed a 19-G petition while a petition for attorney's fees and penalties was before the commission. There wasn't a review of the award that was provided by the commission. So while the review was up before the commission, it was reasonable for the plaintiff not to file at the circuit court level because it would have been dismissed based on case law. In response to Mr. O'Brien's statement that the bacteria that attacked the heart was not the same bacteria that was in the lower back because this was a strain-resistant bacteria. My response is while we don't get to that issue yet, as it would be a crushing effect for a judge to look at those medical records to determine that, I don't believe that that is what the doctor said. The strain can transform from a resistant to, I mean the strains of staph infection can change as they travel throughout the body. The doctor did not indicate that there is no causal relationship between the staph infection in his back and his heart. That issue should have been litigated and then decided by the trial of fact. Also, the defendant's statement that the language in his affidavit is somehow fact and not a conclusion is, I'm sorry, I can't concur, but the language in your contract has to be given some kind of meaning. The defendant is arguing that his interpretation of that language is somehow fact. He is arguing that he is the authority and he is able to interpret that language and anybody else's interpretation of it is not reasonable. It's our position that the language is actually not ambiguous for our side, but if his interpretation can be assumed as reasonable, then we have to believe that there is an ambiguity in that language that should be resolved by a trial of fact. Is there some policy reason to treat settlement contracts that are approved by the commission differently than arbitration awards handed down by the commission for statute of limitation purposes? I think there is. Once a decision is actually decided by the arbitrator, the arbitrator hears all the facts, hears all the evidence, and will make his determination. It's an actual decision of the arbitrator. When there's a settlement contract, both sides are negotiating between themselves. There's no real overlooking of the contract. So if there's an error in that contract, I believe that the policy of the Workers' Compensation Act would make sense to have a longer time to review that decision. Does the Workers' Compensation Act provide for greater remedies if it's enforced through the commission than it is through a court of law? Are you talking about to enforce the decision? I'm suggesting that it's an administrative agency. It might have shortcuts. It might have statutory grants of attorney's fees or interest, depending on what the statute says, as opposed to just a mere contract enforcement case. There are avenues for penalties and attorney's fees that can be heard by the commission. Didn't they say they didn't have jurisdiction, so they didn't have the ability to enforce it? So what's the policy that relates to a situation where they claim they have no jurisdiction over it? What disadvantage can be claimed? I don't know. It's not that I'm arguing with my colleague. It just isn't. I'm asking you questions based upon my belief that maybe you have a greater expertise in these areas than I do. If you were to bring the matter before the commission, you could assess penalties and attorney's fees on a contract where the contract is not being adhered to. However, in this case, the court determined that they couldn't assess those penalties because the petition before the commission was a motion to enforce, and they said they had no enforcement authority. So the difference is that the commission can actually, during a certain time period, review the settlement agreement, whether it's being followed, not necessarily enforce it because that's under the auspices of the court. Yes. But your client had waived his right to review in the contract. Right. That is correct. There are avenues where you could review a decision to assess attorney's fees and penalties. Those would still not be able to be enforced until bringing that new commission decision before the circuit court. But in the contract, they did waive some right to review before the commission. No further questions? Thank you. Thank you, Mr. Chairman.